# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
October 18, 2000 Session

## STATE OF TENNESSEE v. RICHARD M. FAR, JR.

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-45821     James K. Clayton, Jr., Judge**

---

**No. M1999-01998-CCA-R3-CD - Filed March 1, 2001**

---

Defendant, Richard M. Far, Jr., was convicted by a Rutherford County jury of Class D forgery of a document valued at more than $1,000. Subsequently, the trial court sentenced Defendant as a Range III persistent offender to ten (10) years to be served consecutively to Defendant's sentence in an arson case (F-45893). Defendant raises two issues on appeal: 1) whether the trial court erred in excluding Defendant from his trial and sentencing hearing and 2) whether the trial court properly considered the sentencing guidelines in sentencing Defendant. After a review of the record, we reverse the judgment of the trial court and remand this matter for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Melton, District Public Defender; and Russell N. Perkins, Assistant Public Defender, for the appellant, Richard M. Far, Jr.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and John W. Price, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On May 2, 1998, Defendant was arrested on charges unrelated to this appeal, at the Greyhound Bus Station in Murfreesboro, Tennessee, by Officer Andrew Darnell of the Murfreesboro Police Department, while trying to board one of the buses. Upon searching the Defendant, Officer Darnell found Defendant's driver's license and a personal check in the amount of $2,800. Officer Darnell turned the Defendant and the items he found on the Defendant, over to Detective Nathan McDaniel. Detective McDaniel testified that upon looking at the check, he knew from his training

that it was a computer generated forgery, because it did not have the perforated edges found on all checks other than U.S. Government checks. Detective McDaniel stated that the check appeared to be a business check for StaffMark, with a handwritten signature that had been scanned on a computer and printed on the check.

Detective McDaniel testified that he questioned Defendant about his presence in Murfreesboro, with a Virginia driver's license and a checkbook with a North Carolina address. Defendant told Detective McDaniel that his Lincoln Continental was being repaired by Alexander Ford in Murfreesboro. McDaniel contacted Alexander Ford and discovered that Defendant's vehicle was at Alexander's Ford, and that Defendant had a repair bill of $2,632.57. After McDaniel told Defendant that he was being charged with forgery, Defendant refused to talk anymore and asked for a lawyer.

McDaniel used the address information on the check to contact StaffMark in Burlington, North Carolina. He spoke with Diane Kalota, the accounting manager for the Eastern Division of StaffMark, who oversaw the weekly payroll for the 1,200 people working through that StaffMark office.

Kalota testified, at trial, that StaffMark had employed Defendant for two days ending on September 30, 1997, and that Defendant had worked a total of sixteen hours. She stated that normally temporary employees earned $6.00 to $7.50 per hour. However, Defendant would be on the lower end of that range. Kalota told the jury that the check recovered from Defendant appeared to be a StaffMark check, but it was not printed on the type of paper regularly used by StaffMark to print payroll checks. Kalota further noted that StaffMark, at no time, owed Defendant the $2,800 amount printed on the check.

At the close of proof, the jury convicted Defendant of Class D forgery. On August 16, 1999, the trial court held Defendant's sentencing hearing. At the hearing, the State presented the testimony of Darlene Steadman, a Corporal with the Rutherford County Sheriff's Department. Corporal Steadman testified that a part of her duties was to transport prisoners from the jail to the courthouse. She further testified that, on the morning of the sentencing hearing, she asked Defendant if he was going to court, and Defendant said he was not. At the conclusion of the hearing, the trial judge sentenced Defendant as a Range III persistent offender to ten (10) years in jail, to be served consecutively to Defendant's twelve (12) year sentence in case number F-45893.

## ANALYSIS

### I. Right to Be Present at Trial and Sentencing Hearing

#### A. Absence at Trial

Defendant contends that the trial court committed reversible error when it overruled his trial counsel's objection and excluded him from his trial. We agree.

2

A defendant has a right under both the federal and state constitutions to be present during his trial. See State v. Muse, 967 S.W.2d 764, 766-67 (Tenn. 1998) (citing U.S. Const. amends. V, VI, XIV; Tenn. Const. art. I, s 9). In addition, a defendant has a statutory right to be present during trial. Muse, 967 S.W.2d at 767 (citing Tenn. R. Crim. P. 43(a)). "Presence at trial means that the defendant must be present in court from the beginning of the impaneling of the jury until the reception of the verdict and the discharge of the jury." Muse, 967 S.W.2d at 766 (citation and internal quotations omitted).

However, the right to be present at trial can be waived by a defendant. Id. at 767. Tennessee Rules of Criminal Procedure Rule 43 states in relevant part:

(a) Presence Required. Unless excused by the court upon defendant's motion, the defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict and imposition of sentence shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, **initially present**:

(1) Voluntarily is absent after the trial has commenced (whether or not he or she has been informed by the court of the obligation to remain during the trial), or

(2) After being warned by the court that disruptive conduct will cause the defendant to be removed from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom. If a trial proceeds in the voluntary absence of the defendant or after the defendant's removal from the courtroom, he or she must be represented in court by competent counsel; and, if the defendant has been removed from the courtroom, he or she shall be given reasonable opportunity to communicate with counsel during the trial. If a trial is proceeding with the defendant excluded from the courtroom because of disruptive conduct, the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant.

Tenn. R. Crim. P. 43. (emphasis added).

In order for a waiver of a constitutionally granted right to be valid, it must be "voluntarily, knowingly, and intelligently" given. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992). The knowing and voluntary waiver includes the intentional relinquishment or abandonment of known rights. State v. Pearson, 858 S.W.2d 879, 887 (Tenn. 1993); Johnson v. State, 834 S.W.2d 922, 923 (Tenn. 1992). The record of a waiver of a defendant's right "must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant

3

consequences of such a [waiver]; otherwise, it will not amount to an 'intentional abandonment of a known right.'" State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). The Court will not presume a waiver of important constitutional rights from a silent record. See Johnson v. State, 834 S.W.2d at 923. Further, the right of a defendant to be present at his trial, "is so fundamental that procedural safeguards must be employed on the record to insure that the defendant's waiver of the right to testify was made voluntarily, knowingly, and intelligently. See Momon v. State, 18 S.W.3d 152, 160 n.11 (Tenn. 1999) (quoting, State v. Neuman, 179 W.Va. 580, 371 S.E.2d 77, 81 (1988)). The mere absence of the Defendant, at the time his case is called for trial, is insufficient to constitute a waiver of his right to be present. State v. Kirk, 699 S.W.2d 814, 819 (Tenn. Crim. App. 1985).

The State contends that Defendant, who was in custody, voluntarily left the pretrial meeting held in the jury room and in so doing waived his right to be present. Relying upon State v. Kirk, the State argues that "[a]n accused who has notice of the time and place of the trial and of his right to attend, and who nonetheless voluntarily absents himself, will be deemed to have waived his right to be present." Kirk, 699 S.W.2d at 819. Further, the State argues that this case is also similar to State v. Marcus Anthony Robinson, No. 03C01-9512-CR-00410, Hamilton County (Tenn. Crim. App., Knoxville, July 16, 1997), wherein a defendant who was present during a jury-out hearing, left the building prior to the start of voir dire. In Kirk and Robinson, this Court found that both defendants had voluntarily waived their right to be present, because they knew the time and place for the start of trial, but chose not to be present.

We believe this case is clearly distinguishable from both Kirk and Robinson, because the Defendant was in custody and unable to leave, unless ordered by the judge. In Kirk, the defendant was not in custody, because he had managed to escape, when taken to see a pyschologist. Kirk, 699 S.W.2d at 815. In Robinson, the lead opinion, relying upon Kirk, found that the defendant's initial presence at trial was sufficient to make his departure (during a brief recess) a voluntary waiver of his right to be present. See, Crosby v. United States, 506 U.S. 255, 260, 113 S. Ct. 748, 752 122 L. Ed. 2d 25 (1993) ("[W]here the offense is not capital *and the accused is not in custody*, ... if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." (quoting Diaz v. United States, 223 U.S. 442, 455, 32 S. Ct. 250, 254 56 L. Ed. 500 (1912)) (emphasis added). However, we note that Judge Tipton's concurring opinion in Robinson correctly notes that the ruling in Kirk is suspect, in light of Crosby v. United States, wherein the Supreme Court overruled the federal cases relied upon in Kirk.

In Crosby, the defendant failed to appear for his trial and was unable to be found. The district court found that the defendant had waived his right to be present and tried the defendant *in abstentia.* Six months later, the defendant was apprehended and sentenced. The Circuit Court of Appeals affirmed the district court, but the Supreme Court overruled both the appellate court and the district court and remanded the case for a new trial. The Supreme Court, interpreting the language of Federal Rules of Criminal Procedure 43, held:

4

It is not necessary to invoke that maxim in order to conclude that Rule 43 does not allow full trials in absentia. The Rule declares explicitly: "The defendant shall be present ... at every stage of the trial ... except as otherwise provided by this rule" (emphasis added). The list of situations in which the trial may proceed without the defendant is marked as exclusive not by the "expression of one" circumstance, but rather by the express use of a limiting phrase. In that respect the language and structure of the Rule could not be more clear.

Crosby, 506 U.S. at 258-59, 113 S. Ct. at 751. The Supreme Court further made a clear distinction between "pretrial and midtrial flight." Id. at 261, 113 S. Ct. at 752. The Court expounded that when a defendant voluntarily leaves, midtrial, "the defendant's initial presence serves to assure that any waiver is indeed knowing." Id. As for pretrial cases, the Court held that "[t]he language, history, and logic of Rule 43 support a straightforward interpretation that prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial." Id. Finally, the Court noted that Rule 43's distinction between pretrial and midtrial flight was valid, because it "mark[s] the point at which the costs of delay are likely to outweigh the interests of the defendant and society in having the defendant present," and insures that any waiver by a defendant is knowing and voluntary. Id.

Based upon Crosby, we find this case is more properly compared to the recent Tennessee case of State v. Ballard, 21 S.W.3d 258 (Tenn. Crim. App. 2000), in which the defendant, after engaging in disruptive behavior during a pretrial meeting, was excluded from his entire trial. This Court held that the defendant's disruptive pretrial conduct did not constitute a valid waiver of his constitutional and statutory right to be present during trial. Id. at 261-62. We also held that it was error to exclude the Defendant since Tenn. R. Crim. P. Rule 43 required the trial court, after excluding a disruptive defendant, to periodically determine whether the defendant was willing to return to the courtroom. Id.

Similarly, the Defendant in the case sub judice, was disruptive during a pretrial meeting in the judge's chambers. The record reflects that the following colloquy occurred in chambers, prior to the start of Defendant's trial:

Defendant: I hate you, you know.
Deputy: Fine with me.
Court: Who are you talking to, Mr. Far?
Defendant: I'm talking to you, her, and him, since you want to know so much.
Court: Well, I'm sorry you feel that way.
Defendant: I especially hate you. And I know all of y'all hate n----–s, don't you?
Court: No, sir, we don't.
Defendant: Yes, sir, you hate n-----s, and you're probably a Ku Klux Klan.
Court: No, I'm not a member of the Klan, never have been.
Defendant: You wouldn't admit it no way, would you?
Court: Yes, I would admit if I was.
Defendant: You hate n-----s and you know it.
Court: No, sir, I don't hate n-----s. In fact, I don't like to use that word.

5

Defendant:      I bet you don't. I bet you don't have a problem using it when you're talking to your buddies.

Court:      I'll ask you to find one of my buddies that ever heard me use that word. I don't like to hear it.

Mr. Perkins [Defense Counsel]:      Judge, we are here today in felony case 48521.

Court:      Yes, sir.

Mr. Perkins:      Charging Mr. Far with the offense of forgery in an amount between $1,000 and $10,000. Judge as you may recall, Mr. Far had a trial in another case, another indictment, in February. At that time he refused to come into the courtroom, refused to cooperate with me or with anyone else, for that matter, and we had a trial in his absence and a sentencing hearing back in March.

Defendant:      I hate your guts.

Mr. Perkins:      And then at--

Defendant:      You're a racist. I hate you.

Mr. Perkins:      Then we have this case that was set for today.

Defendant:      I hate you. I hate the way you look. I hate the way you smell.

Court:      Mr. Far, if you want to stay in here, you're going to have to shut up. Go ahead, Mr. Perkins.

Mr. Perkins:      Mr. Far has thus far refused to talk with me about this case. I sent word out there to him yesterday to ask if he would talk with me about this case. The word I received was that he did not wish to see me or speak with me. And I think from his actions here today you can see that that probably is going to be his position in this. I can tell the court that you know, as far this particular case goes, we have a jury here. I have some clothes for Mr. Far if he wants to participate in this trial, and we can go ahead with it today or -- you know, I don't know what he wants to do in this case because he's refused to talk to me about it.

Court:      Well, let me ask him a question or two. Mr. Far do you understand you have the right under the constitution--

Defendant:      Why don't you give a right to a new lawyer, man, like I been asking you since I've been coming in here?

Court:      Mr. Far--

Defendant:      Why don't you give me that right? If you're not going to give me that right, you might as well take me back.

Court:      Take him back.

. . . .

Deputy:      He wants to go back to jail.

Court:      Let him go back to jail. He wants to go back to jail, we're going to send him back to the jail. . . .

6

From the record, it appears Defendant was returned to jail, while the judge and counsel adjourned to the courtroom to select and swear in a jury and proceed with trial. Prior to the start of testimony, defense counsel moved for a mistrial, due to the trial proceeding without the presence of the Defendant. The trial judge denied the motion for mistrial.

There is no question that Defendant's behavior during the pretrial meeting in the jury room was rude, disruptive and disrespectful. However, we conclude that Defendant's actions did not constitute a Rule 43(b) waiver of his fundamental right to attend his trial. First, Rule 43(b)(1) expressly provides that waiver occurs when a defendant "*voluntarily* is absent *after* the trial has *commenced.*" (emphasis added). Second, Rule 43(b)(2) clearly states that waiver occurs when "a defendant, *initially present* ... [a]fter being warned by the court that disruptive conduct will cause the defendant *to be removed from the courtroom,* persists in conduct which is such as to justify exclusion from the courtroom." (emphasis added). Thus, the obvious undertone of the language in Rule 43(b) is that the rule only allows a trial court to prevent a defendant from continued attendance at his trial when the defendant was *initially* permitted to attend the trial, but either voluntarily chose to abstain from the trial or engaged in disruptive behavior during the trial.

Here, Defendant did not voluntarily abstain from his trial "after" the commencement of the trial. Also, Defendant was not "initially present" and he did not engage in disruptive behavior *during* trial. Instead, Defendant engaged in disruptive pretrial behavior outside of the courtroom and he was never allowed to attend any portion of his trial. It appears that the trial court attempted to make Defendant aware of his constitutional right to be present at trial, only to be interrupted by the Defendant. However, waiver of a fundamental right must be done "voluntarily, knowingly and intelligently." Such a waiver implies that, after acquiring the necessary knowledge and essential facts, the defendant, upon his own volition, intentionally chose to abstain from his trial. Hence, trial courts should move cautiously to safeguard the constitutional and statutory rights of an accused; rather than move hastily in deciding to try a defendant *in abstentia.*

There is a long-standing presumption against waiver of fundamental constitutional rights. See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938). A fundamental constitutional right may only be waived personally by the defendant and will not be presumed from a silent record. Mackey, 553 S.W.2d at 340. In State v. Muse, our supreme court held that a defendant could waive his right to be present during voir dire, if the defendant had "knowledge of the right," and "personally waive[d] the right either in writing or on-the-record in open court" prior to the start of voir dire. See, 967 S.W.2d at 768.

Likewise, we find that in order for a defendant to waive his pretrial right to be present at any of the "critical stages" of his trial, there must be proof in the record, that : (1) the defendant was properly informed of the right to be present, as well as of the consequences of voluntarily waiving this right; and (2) the defendant must either provide the court with a written statement or an oral statement on the record attesting to the voluntary waiver of the right to be present. Here, there is no proof in the record to indicate that Defendant, pretrial, voluntarily waived his right to be present at trial, after being informed of the right. Although it appears that the trial court attempted to explain Defendant's constitutional and statutory rights, we find that the court neither received an effective

7

waiver from Defendant nor attempted to obtain such a waiver prior to or at the start of voir dire. A statement by a jailor that Defendant wanted to "go back to jail" was not sufficient to constitute a knowing, voluntary and intelligent waiver of Defendant's right to attend his trial.

Even if we were to find that Defendant's disruptive conduct during the pretrial meeting was an initial waiver of his right to be present at trial, we still find that Defendant's rights, pursuant to Rule 43(b)(2), were violated. When a defendant is excluded from his trial, because of disruptive conduct,

> . . . he . . . shall be given reasonable opportunity to communicate with counsel during the trial. If a trial is proceeding with the defendant excluded from the courtroom because of disruptive conduct, the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant.

Tenn. R. Crim. P. 43(b)(2). Here, the record clearly reflects Defendant's desire not to communicate with his court appointed attorney. However, the record also indicates that once the trial began (with the start of voir dire), the trial court failed to "periodically determine" whether Defendant was willing to cooperate with the conducting of his trial. Rather, the court merely presumed waiver from Defendant's absence and proceeded to hold voir dire and the trial without Defendant. The State argues that this case is also similar to State v. Carruthers and Montgomery, ___ S.W.3d ___, No. W1997-00097-SC-DDT-DD, 2000 WL 1824442, at *1 (Tenn. December 11, 2000). In that case, the sentencing hearing was held at the penitentiary where Carruthers was being incarcerated. Carruthers was aware that his sentencing hearing was about to commence, but Carruthers refused to attend the hearing. The Tennessee Supreme Court held:

> This is not a case where waiver was presumed from Carruthers' mere absence at the time the sentencing hearing convened. The trial judge made every effort to persuade Carruthers to attend the hearing. On three separate occasions, the trial judge instructed Warden Bell to confer with Carruthers and attempt to persuade him to appear. On each of those occasions, the record reflects that Warden Bell assured Carruthers his restraints would be removed and emphasized his right to make a statement at the hearing. Under these circumstances, we have no hesitation in concluding that Carruthers waived his right to be present at sentencing.

Id., 2000 WL 1824442, at *43.

---

Carruthers is distinguishable. In the case sub judice, the Defendant interrupted the trial judge's attempts to advise Defendant of one or more of his constitutional rights. The record is not clear as to what the trial court intended to say to the Defendant. The Defendant asserted that, if the trial judge was not going to appoint Defendant another lawyer, then the court "might as well take me [Defendant] back. The trial court then stated, "Take him back." The record shows that the Defendant

was then removed from the judge's chambers and the judge immediately stated, "Let's go select a jury." There were comments by the judge and the prosecutor, and then a deputy stated, "He [Defendant] wants to go back to the jail." Immediately, the trial court made the following comments:

> The Court:     Let him go back to the jail. He wants to go back to the jail, and we're going to send him back the jail. He has complained about his lawyer. However, he has never given me a reason why his lawyer could not represent him. I know his lawyer to be a good lawyer, and I know his lawyer will do the best job he can for him. Under the circumstances, he is cutting his own throat, but that's his right.

In Carruthers, the trial judge sent the Warden to see the defendant three times regarding defendant's right to be present at his sentencing hearing. Also, the Warden testified under oath as to this conversation with the defendant.

In Defendant Far's case, Defendant's remark to "take me back" apparently meant take him back to the courtroom or a holding area in the courthouse, rather than the jail, because the trial court did not immediately order Defendant to be sent back to the jail. Only when a deputy made a statement, not under oath or subject to cross-examination by Defendant's lawyer, that Defendant wanted to go back to jail, did the trial judge order the Defendant to be taken back to jail. In this case, it does not appear from the record that the trial court made the same effort to persuade and advise Defendant to attend the hearing, as did the trial court in Carruthers. Furthermore, this case does not present the same level of proof regarding Defendant's *knowing* desire to be absent from his trial, as in Carruthers.

We are mindful of and sympathetic to the frustration caused to the trial court and counsel for both the State and the Defendant in this case. Members of this panel have, as practicing attorneys, represented clients in litigation who were less than congenial. One member of this panel, as a trial judge for ten years, also dealt with the problems associated with disruptive defendants. Each attorney or judge who labors in our judicial system long enough will undoubtedly be required to face a similar situation. However, the Constitutions of our nation and state, along with state procedural rules, afford rights to and obligations on both the State and the defendant. These rights and obligations must be preserved, protected and honored in bad times as well as good.

Accordingly, having determined that the Defendant's statutory and constitutional rights were violated by conducting voir dire and his full trial in his absence, we must next determine whether the error committed by the trial court was harmless. Pursuant to both the federal and state constitutions, the right of a Defendant to be present at his trial is essential to a fair trial. See, U.S. Const. amends. V, VI, XIV; Tenn. Const. art. I, § 9. Presence permits a Defendant to confront and observe witnesses; to make suggestions to his lawyer; to observe evidence introduced by the State; and to absorb information that may be important on appeal or in a later petition for post-conviction relief. Ballard, 21 S.W.3d at 262. Here, Defendant was not present at any portion of his trial and, therefore, was not permitted to engage in any of the aforementioned actions. Thus, without an

effective, voluntary waiver, we conclude that Defendant's absence from his entire trial proceeding "result[ed] in such prejudice to the judicial process that automatic reversal is required". See State v. Bobo, 814 S.W.2d 353, 358 (Tenn. 1991); see also, Tenn. R. App. P. 36(b).

## B. Absence at Sentencing Hearing

The Defendant also asserts that the trial court erred by holding the sentencing hearing in his absence. First, we initially note that we cannot find where Defendant's counsel, who was present at the sentencing hearing, objected to the proceeding being held in the Defendant's absence. Secondly, defense counsel called as a witness, Corporal Darlene Steadman with the Rutherford County Sheriff's Department, who testified that on the date of the sentencing hearing, she knew that she was to transport Defendant to his sentencing hearing. She testified that she asked the Defendant if he was going to come, and he refused the offer for her to transport him to court for his sentencing hearing.

We have reversed the conviction and remanded for a new trial. Therefore, the issue as to whether or not the trial court erred by holding the sentencing hearing in Defendant's absence is moot. However, we note that in the event there is another conviction and a necessary sentencing hearing upon remand, that the trial court should ensure that the Defendant is aware of his constitutional and statutory rights to attend his sentencing hearing, prior to holding the sentencing hearing in Defendant's absence. While the sworn testimony of the officer clearly shows that the Defendant did not want to attend his sentencing hearing, there is nothing in the record to indicate that the trial court affirmatively advised Defendant of his constitutional and statutory right to attend. Furthermore, prudence might dictate that the trial court exercise its right to require the Defendant to attend his sentencing hearing, subject to being removed if he becomes disruptive. In fact, we note that following the direct examination of Corporal Steadman, the trial judge commented on his ability to force Defendant to come to court (at the sentencing hearing or a trial):

> Q:     And what is your understanding about his intentions as far as coming to court?
> A:     As far as I understand it, he'll probably not set foot in this building again.
> Mr. Osborne:  That's all I had, your honor.
> The Court:     That is unless we force him to come.
> The Witness:  Force him to.

## II. SENTENCING

The Defendant argues that the trial court imposed an excessive sentence and should have ordered the sentence for forgery to be served concurrent with a prior arson conviction rather than consecutive to the arson conviction. Even though we have reversed Defendant's conviction and remanded it for a new trial, we choose to address the sentencing issue in the event of further review or for guidance on remand, in the event of a conviction following further proceedings.

10

Other than the pre-sentence report, there was no further proof taken at the sentencing hearing beyond the testimony of Officer Steadman. In addition to stating that the Defendant declined an offer to be transported to court for his sentencing hearing, Officer Steadman testified that she had previously transported the Defendant to court on more than one occasion. She stated that the Defendant, on these occasions, had made numerous threats to her. She further asserted that the threats involved the use of a deadly weapon even though Defendant was not in possession of a deadly weapon at the time. She also confirmed that the Defendant, on these occasions, had made threats to other persons involved in the prosecution of him, and that he was being housed in the maximum security portion of the jail.

Following closing arguments by counsel, the trial court summarized the facts in the case resulting in the conviction for forgery. The trial court also stated that the Defendant, on a prior occasion, had told the court, the prosecutor, and the Defendant's lawyer, that he (Defendant) was a "professional criminal." The trial court acknowledged that the Defendant stated that he did not care to speak with the court and the attorneys involved and that Defendant had cursed them and "threatened anybody that happened to have been in the room."

In making its ruling, the trial court then concluded the sentencing hearing by stating as follows:

> The Court: But on the other hand, I don't think he should be treated that much differently than anybody else. But with his prior record, I have to find he is a multiple, Range 3, persistent offender, if not a professional criminal. And I would sentence him to ten years, as a Range 3, 45 percent offender.
>
> And in view of the fact that I think he has spent most of his life being a criminal, I fell [sic] like society demands that it run consecutive to his prior offense of the arson, aggravated arson - - or just arson, I believe.

Defendant was sentenced to serve ten years as a persistent Range III offender. The sentencing range for a Class D felony, persistent offender, is not less than eight nor more than twelve years. Tenn. Code Ann. § 40-35-112(c)(4) (1997). At the sentencing hearing, the trial court did not specify the list of felonies relied upon to sentence Defendant as a persistent Range III offender.

The record does reflect that Defendant has a conviction for arson and the trial court ordered the sentence on appeal in this case to be served consecutive to that arson conviction. Defendant's earliest conviction of record was in 1975, and the pre-sentence report reflects that this was a conviction of "assault with intent to rob," for which he received a sentence of three years of incarceration from a Maryland Criminal Court. The pre-sentence report also reflects that he was convicted of "passing an altered note" in a federal district court and was given a $50.00 fine, but any incarceration from this conviction is unclear in the record. He was also convicted of "passing counterfeit currency" in a federal district court in Baltimore and received three years of incarceration

11

and two years of federal probation. Defendant was convicted of forgery "up to $1000.00" in the State of Wyoming, and was sentenced to not less than 14 months nor more than 36 months confinement. He was also convicted of "mutilation of notes" in a federal district court in San Diego and received three years of federal probation and a $100.00 fine. Finally, the pre-sentence report reflects that Defendant was convicted of "attempted larceny - pickpocket" and received 18 months of probation in a Maryland Criminal Court. However, the pre-sentence report also shows that the Defendant was less than 18 years old at the time of the conviction of "mutilation of notes," "attempted larceny - pickpocket," and "assault with intent to rob." Also, the presentence report reflects that he was both arrested and convicted on the same dates for the forgery, "mutilation of notes," and "attempted larceny - pickpocket" convictions in 1981, 1978, and 1976, respectively.

Defendant was convicted of a Class D felony in this case and therefore, in order to have him found to be a "persistent offender" pursuant to Tennessee Code Annotated section 40-35-107, the State must show that he has a combination of "five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable." Tenn. Code Ann. § 40-35-107(a)(1) (1997).

Furthermore, Tennessee Code Annotated section 40-35-107(b)(5) states that "'prior convictions' includes convictions under the laws of other any other state . . . , if committed in this state, would have constituted an offense cognizable by the laws of this state." If the conviction in the other state is not a named felony in Tennessee, the elements of the offense committed in the other state must be used to determine what classification the offense is given in a Tennessee court. Tenn. Code Ann. § 40-35-107(b)(5) (1997).

Tennessee Code Annotated section 40-35-107(b)(3) states that when an offense is committed as a juvenile, it cannot be considered as a prior conviction unless the juvenile is convicted of a felony in criminal court. At most, Defendant has convictions for seven (7) prior felonies. However, the information in the pre-sentence report is sketchy and questionable. It is impossible to tell from the record whether the convictions for offenses committed as a juvenile and the convictions in states other than Tennessee, meet the requirements necessary to classify Defendant as a "persistent offender" under 40-35-107 (b)(3) and (b)(5). In the event of another sentencing hearing, in order to uphold the sentence of "persistent offender," the trial court should make additional findings of fact based upon more conclusive evidence than what is presently contained in the pre-sentence report. We note that before a Defendant can be sentenced within Range III, the court must find him, "beyond a reasonable doubt," to be a persistent offender. Tenn. Code Ann. § 40-35-107(c).

In addition, the trial court did not state the specific enhancement factor used to elevate the sentence from the presumptive sentence of eight years to ten years. In State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994), our supreme court said that "[t]o facilitate meaningful appellate review . . . the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence."

We further note that the trial court, in ordering consecutive sentencing, stated that his reason was the fact that "I think he has spent most of his [Defendant] life being a criminal." Other than the list of convictions in the pre-sentence report, there is nothing in the record to substantiate this finding, even though the trial court made a finding that the Defendant once stated that he was a professional criminal. The State did not present any transcript of that statement as evidence at the sentencing hearing in this case. Sufficient proof of that might support consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(1) (defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood), but there is not sufficient evidence in the present record on appeal to support that finding.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded for a new trial.

_____
THOMAS T. WOODALL