371 S.E.2d 77

**STATE of West Virginia**

v.

**Mark Stewart NEUMAN.**

**No. 17903.**

Supreme Court of Appeals of
West Virginia.

July 1, 1988.

Silas Taylor, Deputy Atty. Gen., State Capitol, for plaintiff.

David L. White, Bluefield, for defendant.

McGRAW, Justice:

This is an appeal by Mark Stewart Neuman from a final judgment order entered in the Circuit Court of Mercer County following a jury verdict finding him guilty of first degree murder, but recommending mercy. Because we agree with the Appellant that the circuit court erred in allowing introduction of evidence of the victim's peacefulness and in not ascertaining whether the Appellant had properly waived his right to testify, the judgment of the circuit court is reversed and the case remanded for a new trial.[1]

David Reid, a Concord College student, was shot on November 15, 1985, and the Appellant was charged with his murder. The prosecution was based on circumstan-

---

1. The Appellant's other assignments of error were not addressed during oral argument, and finding them without merit, we do not address them in our opinion.

tial evidence, there being no witnesses to the actual shooting.

The State established that, exactly a year prior to Reid's death, the Appellant had been injured in a fight involving Reid, and that the Appellant harbored considerable resentment about that incident. The State also presented evidence regarding the Appellant's presence near the crime scene on the night of the murder, and the Appellant's dress at that time. Other witnesses testified that they saw someone similarly dressed running away from the body. Two policemen testified that a car similar to the Appellant's almost ran into their patrol car just before they found Reid's body in the street. The police recovered two .22 caliber shells from the Appellant's dresser. Reid was killed by .22 caliber bullets.

During the State's case-in-chief, three witnesses testified as to the victim's peaceful character. The Appellant's trial counsel objected to this testimony, but the circuit judge overruled that objection. The judge later explained that he thought the character evidence was admissible under the rules of evidence, while noting his concern that "they might be suggesting to do it in rebuttal, although it's not clear."

The presentation of the defense's case-in-chief was brief, concentrating on two matters involving physical evidence. A state trooper testified that the clothing taken from the Appellant's apartment, which was similar to that worn by the man seen running away from the crime scene, had been tested for gun powder residue and blood stains with negative results. Two policemen then testified that when they examined Reid's body at the scene, they observed that he clutched a four inch long tip from a lawn dart in his hand.

Following the closing arguments, the jury returned a guilty verdict, with a recommendation of mercy.

### I.

The Appellant first contends that the circuit court misapplied West Virginia Rules of Evidence 404(a)(2) in permitting the introduction of testimony regarding the victim's peaceful character in the State's case-in-chief. That rule declares that character evidence is generally not admissible to prove that someone acted in conformity with that trait on a particular occasion, with certain specified exceptions. The exception to the general rule relevant here is that the "evidence of a character trait of peacefulness of the victim [may be] offered by the prosecution in a homicide case *to rebut evidence that the victim was the first aggressor.*" W.Va.R.Evid. 404(a)(2) (emphasis added).

Rule 404 is essentially a codification of the common law concerning the admission of character evidence, *State v. Welker*, 178 W.Va. 47, 50, 357 S.E.2d 240, 244 (1987), and it has long been the case in West Virginia that "[u]ntil attacked by the defense, the deceased's character for peaceable and quiet conduct is presumed to have been good, and the state may not make it a subject of primary proof." Syl. Pt. 4, *State v. Arrington*, 88 W.Va. 152, 106 S.E. 445 (1921). The West Virginia policy is consistent with the general rule. *McCormick on Evidence* § 193 (2d ed. 1972).

> It is well settled that the prosecution cannot, in the first instance and as a part of its evidence in chief, or before the character of the deceased has been attacked by the defense, introduce evidence of the reputation of the deceased for peaceableness or prove that he was a quiet and orderly citizen.

40 Am.Jur.2d *Homicide* § 308 (1968).

The State does not offer us any compelling reason to abandon the longstanding rule. Instead, we are told that the prosecution at trial relied on what it anticipated the defense theory would be, that is, self-defense. In pretrial proceedings, the Appellant's trial counsel had indicated that a psychologist would testify at trial that the Appellant felt he acted in self-defense.[2] As the trial actually proceeded, the only evi-

---

**2.** The Appellant already had served formal notice that he intended to rely on the defense of insanity.

dence offered by the Appellant which could possibly be construed as raising a claim of self-defense was the brief testimony that Reid had a lawn dart tip in his hand when his body was found. There was apparently some doubt in the trial judge's mind, which we share, that this evidence was sufficient to raise a claim of self-defense. Nevertheless, even this minimal evidence was presented at the end of the Appellant's case-in-chief, long after the prosecution's character evidence had been introduced.

■ It is improper for the prosecution to offer evidence of the victim's peacefulness until *after* the defense has offered evidence which either attacks a pertinent character trait of the victim or tends to show that the victim was the first aggressor. W.Va. R.Evid. 404(a)(2). The prosecution's reliance on anticipated evidence misconstrues Professor Cleckley's discussion of the evidentiary rule. *See* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.2(F) (2d ed. 1986).

■ The Appellant's trial counsel objected to the introduction of evidence regarding the victim's peaceful character, and discussion with the trial court makes it clear that the judge and the lawyers understood the nature of the objection under Rule 404 (a)(2). Further, on reviewing the entire record, and the completely circumstantial case put on by the prosecution, we cannot say that presentation of the character evidence was harmless error. *See State v. Whitt*, 96 W.Va. 268, 122 S.E. 742 (1924). Therefore, we find that the State committed reversible error in presenting evidence of the victim's peacefulness before the defense raised the character issue or presented evidence that the victim was the first aggressor.

## II.

The Appellant next contends that the circuit court erred by failing to ascertain on the record that he had made a knowing, voluntary, and intelligent waiver of his right to testify in his own behalf.

Although the early common law considered a defendant incompetent to testify in his own behalf, such a rule has never been recognized in the history of this state. *State v. Kincaid*, 104 W.Va. 396, 140 S.E. 338 (1927); *State v. Chisnell*, 36 W.Va. 659, 15 S.E. 412 (1892). Indeed, it is established law in this state that a defendant has a right to testify in his own behalf, *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981); *State v. McKinney*, 161 W.Va. 598, 599–600, 244 S.E.2d 808, 810 (1978), and this right has been protected by statute since the earliest days of our state's existence. *See* W.Va.Code § 57–3–6 (1966). Perhaps because of the fact that a defendant's right to testify has always been recognized in West Virginia, this Court has not previously been called upon to determine if this right has a constitutional basis.

The United States Supreme Court has repeatedly recognized a defendant's right to testify, most often grounding such a right in the federal constitution's guarantee that no person shall be deprived of life, liberty, or property without due process of law. *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); *see Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). In *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), that Court explicitly held that "[a]t this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Id.* at 49, 107 S.Ct. at 2708.[3]

■ The West Virginia Constitution, art. III, § 10, provides a criminal defendant a level of due process protection at least equal to that provided through the fifth and fourteenth amendments to the United

---

**3.** In *Rock v. Arkansas*, the United States Supreme Court pointed not only to the federal constitution's due process provisions as sources of the right to testify, but also to the compulsory process clause of the sixth amendment. 483 U.S. at 52, 107 S.Ct. at 2709.

States Constitution, and may, in certain circumstances, require higher standards of protection. *State v. Bonham*, 173 W.Va. 416, 418, 317 S.E.2d 501, 503 (1984). Therefore, we find that a criminal defendant's right to give testimony on his own behalf is protected under article three, section ten of our Constitution, as well as the due process provisions of the federal constitution.

The more difficult matter raised by the Appellant's assignment of error is whether his right to testify is so fundamental that it can only be waived by the defendant personally after procedural safeguards are observed to insure that the waiver is voluntary, knowing, and intelligent. While the United States Supreme Court has not been squarely faced with this issue, Chief Justice Burger, in his concurrence in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), opined that many trial decisions rest with the attorney and that "[o]nly such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make." *Id.*, 433 U.S. at 94, 97 S.Ct. at 2510; *see Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–3313, 77 L.Ed.2d 987 (1983). Similarly, the fundamental nature of the constitutional right to testify is recognized by and reflected in the relevant American Bar Association standard

> (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:
>
> (i) what plea to enter;
>
> (ii) whether to waive jury trial; and
>
> (iii) whether to testify in his or her own behalf.

ABA Standards for Criminal Justice § 4–5.2(a) (2d ed. Supp.1986).

■ The Supreme Court of Colorado carefully considered the nature of the right to testify in *People v. Curtis*, 681 P.2d 504 (Colo.1984). That court recognized that certain constitutional rights are so inherently personal and so tied to fundamental concepts of justice that their surrender by anyone other than the accused acting voluntarily, knowingly, and intelligently would call into question the fairness of a criminal trial. *Id.* at 511. The decision to testify is often crucial in determining a defendant's fate, and because of its potential consequences should not be left entirely to the dispassionate judgment of trial counsel. When the accused takes the stand, he has his due process guaranteed "day in court" in the most literal sense. Only the defendant can speak directly to his state of mind, and, when he chooses to take advantage of his opportunity to be heard, the outcome of the trial appears to him and to the public as a whole to be more based on acceptance or rejection of his claims, rather than on legal maneuverings. *See id.* at 512–14.

■ We agree with the Supreme Court of Colorado that the decision to testify in one's own behalf, like the right to determine what plea to enter, the right to a jury trial, the right to counsel, and the right to be present at trial, is so fundamental that procedural safeguards must be employed on the record to insure that the defendant's waiver of the right to testify was made voluntarily, knowingly, and intelligently. *See id.* at 514. The record in this case is silent as to whether the Appellant waived his right to take the stand, and we cannot presume that a valid waiver was made. "Courts indulge every reasonable presumption against waiver of a fundamental constitutional right and will not presume acquiescence in the loss of such fundamental right." Syl.Pt. 2, *State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964).

In *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975), we detailed the procedural safeguards to be undertaken on the record by the trial judge before accepting a defendant's guilty plea, so that a reviewing court could determine that the defendant's waiver of rights was voluntary, knowing, and intelligent. *Id.* 159 W.Va. at 196–197, 220 S.E.2d 668–69. We have also required that the record reflect a voluntary, knowing, and intelligent relinquishment of the right to be present at trial, *State v. Eden*,

163 W.Va. 370, 256 S.E.2d 868 (1979), of the right to remain silent and be free from self-incrimination, *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981), or of the right to counsel, *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985). We will apply a similar standard to the defendant's fundamental right to testify in his own behalf.

■ We adopt a similar procedure to that set forth by the Colorado court in *Curtis*

[a] trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him.... In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

*Curtis*, 681 P.2d at 514. The substantive right to testify has long been recognized in West Virginia; our decision today details procedures to protect that right. Although it has long been and remains the duty of all courts to insure that any relinquishment of a fundamental constitutional right is by a valid waiver of that right, the specific requirements of these procedural safeguards shall be applied prospectively in cases other than the one before us. *Curtis*, 681 P.2d at 516–17.

The judgment of the Circuit Court of Mercer County is reversed and the case is remanded for a new trial.

Reversed and Remanded.