738 S.E.2d 538

David BALLARD, Warden, Respondent
Below, Petitioner

v.

David Lee HURT, Petitioner
Below, Respondent.

No. 11–0816.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 16, 2012.

Decided Nov. 9, 2012.

Darrell V. McGraw, Jr., Esq., Attorney General, Laura Young, Esq., Marland L. Turner, Esq., Assistant Attorney General, Charleston, WV, Attorneys for Petitioner.

Robert C. Catlett, Esq., Deputy Public Defender, Office of the Public Defender, Charleston, WV, Attorney for Respondent.

PER CURIAM:

Petitioner State of West Virginia appeals the April 18, 2011, order of the Circuit Court of Pocahontas County that granted the petition for a writ of habeas corpus of Respondent David Lee Hurt, vacated the respondent's first degree murder conviction, and voided his sentence of life with mercy.

After reading the parties' briefs, listening to oral argument, reviewing the record below, and applying the relevant law, this Court reverses the circuit court's April 18, 2011, order and remands for additional proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS BELOW

We begin with a brief overview of the facts. We will then supplement this overview as necessary in our discussion of the issues.

Respondent David Lee Hurt was initially tried for murder in the Circuit Court of Mercer County in September 1997, in the killing of Freddie Lester, a convenience store clerk. At the trial, Michael Hopkins, the respondent's co-defendant, testified on behalf of the State that he entered the convenience store at the direction of the respondent, shot Mr. Lester in the back of the head, and stole cash in the amount of $157.00, which he split with the respondent. The respondent testified and denied involvement in Mr. Lester's murder. This trial ended in a hung jury and a mistrial.

After the respondent's first trial, his trial counsel moved for a change of venue which was granted by the circuit court. As a result, the respondent's second trial for the murder of Freddie Lester occurred in the Circuit Court of Pocahontas County. Again, Mr. Hopkins and the respondent, among others, testified. At the end of this trial, the respondent was found guilty of the first-degree murder of Freddie Lester and sentenced to life in prison with mercy.

Shortly thereafter, the respondent filed a *pro se* habeas corpus petition in the Circuit Court of Pocahontas County. The circuit court subsequently appointed counsel for the respondent and directed counsel to file an amended habeas corpus petition based on the ground of newly discovered evidence.

After several delays and the appointment of new counsel on behalf of the respondent, the respondent filed an amended habeas corpus petition which was denied by the Circuit Court of Pocahontas County by order dated April 9, 2002.

The respondent then retained private counsel and filed another petition for a writ of habeas corpus in the Circuit Court of Mercer County. The petition was transferred to the Circuit Court of Pocahontas County because of that court's greater famil-

iarity with the case. In that petition, the respondent set forth two primary grounds for habeas corpus relief: newly discovered evidence that supported his claim of innocence and ineffective assistance of counsel in his previous habeas corpus proceedings.

By order dated March 30, 2009, the Circuit Court of Pocahontas County granted the respondent an evidentiary hearing on the single issue of whether the respondent's previous habeas corpus counsel committed reversible error by failing to obtain affidavits to corroborate the alleged recantation of the respondent's co-defendant, Michael Hopkins. After holding an evidentiary hearing on this matter, the circuit court found that the respondent's previous habeas corpus counsel committed reversible error.

As a result, the circuit court vacated the prior order that denied habeas corpus relief to the respondent and directed the respondent to file another petition for a writ of habeas corpus addressing any and all issues arising from the respondent's second trial. After the respondent filed his petition for habeas corpus relief as directed by the circuit court, the circuit court held an evidentiary hearing on the issues raised in the petition.

Thereafter, the circuit court entered its April 18, 2011, order granting the respondent habeas corpus relief which is the subject of this appeal. The granting of habeas corpus relief is based on the circuit court's determination that the respondent's counsel in his second trial was ineffective. Using the test for ineffectiveness of counsel set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the circuit court found that "for all of the individual and cumulative reasons set forth in the [the respondent's habeas petition], and incorporated herein by reference, the [respondent's] Trial Counsel was deficient under an objective standard of reasonableness." With regard to the second prong of Strickland, the circuit court found that "[f]or all of the individual and cumulative reasons set forth in the [respondent's habeas petition], and incorporated herein by reference, this Court believes that the [respondent] meets this criterion as well."

The circuit court made specific findings with regard to one of the grounds of ineffective assistance of counsel. Specifically, the circuit court found that trial counsel was ineffective in failing to ensure that the trial court advised the respondent of his right to testify and not to testify. The circuit court found that the trial court failed to advise the respondent of these rights, and that the record does not reflect that the respondent's trial counsel advised him of these rights. The circuit court further found that the respondent was prejudiced by this failing because he testified and was subjected to cross-examination regarding allegations of his involvement in stealing a van and a jeep; his appearance at Freddie Lester's home the morning following Mr. Lester's murder where he conveyed specific information to Mr. Lester's widow concerning the murder; and his flight out of State after the murder.

Finally, the circuit court specifically found that "Michael Hopkins, based on the entire record, is not a credible witness."

## II. STANDARD OF REVIEW

■ Pursuant to deciding the issues before us, this Court is guided by the following standard of review:

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review.

Syl. pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

## III. DISCUSSION

The State first assigns as error the circuit court's ruling that it was constitutional error for the trial court to fail to advise the respondent of his right to testify and not to testify, and that trial counsel's failure to enforce this right rose to the level of ineffectiveness.

■ In Syllabus Point 7 of *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988), this Court held:

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

In the instant case, it is undisputed that the trial court did not instruct the respondent of his rights as set forth in *Neuman.* This Court has made clear, however, that "the *Neuman* requirements, like *Miranda* warnings, are not constitutional rights themselves but are merely prophylactic standards designed to safeguard the right of every criminal defendant to testify in his or her own behalf." *State v. Blake,* 197 W.Va. 700, 712, 478 S.E.2d 550, 562 (1996), *citing Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (footnote omitted). Our law is also plain that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979). Thus, a trial court's failure to instruct a defendant of his rights under *Neuman* is not a violation of constitutional magnitude and is not cognizable in a habeas corpus proceeding. Therefore, the circuit court erred to the extent that it based its grant of habeas relief on the trial court's failure to instruct the respondent pursuant to *Neuman.*

■ The circuit court also based its grant of habeas corpus relief on the fact that the respondent's trial counsel failed to remind the trial court to instruct the respondent pursuant to *Neuman.* This too is incorrect. The circuit court cited no law and this Court is not aware of any that imposes on trial counsel the duty to remind the circuit court to instruct a defendant on his or her right to testify or not to testify.

■ Significantly, the circuit court further found that "[t]he record does not reflect that [the respondent] was advised of [his *Neuman* ] rights by his Trial Counsel." Clearly, trial counsel had a duty to instruct the respondent of his right to testify and not to testify. Trial counsel also had a duty to explain that if the respondent testified, the State would be permitted to cross-examine him, and if he did not testify, the jury would be instructed regarding his right not to testify. Under Rule 1.2(a) of the West Virginia Rules of Professional Conduct, in part, "[a] lawyer shall abide by a client's decision ... whether the client will testify." The rule obviously contemplates that a client will make an informed decision regarding whether or not to testify after being fully advised of this right by his or her counsel.

■ This Court held in Syllabus Point 15, in part, of *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998), that "[a] rebuttable presumption exists that a defendant represented by legal counsel has been informed of the constitutional right to testify." Of course, this rule applies equally to the constitutional right not to testify. In the instant case, the respondent testified in his habeas corpus proceeding that he was not informed by his trial counsel of his right not to testify. Specifically, the transcript of the respondent's cross-examination during the habeas corpus hearing indicates the following:

Q. And you seem like a very intelligent man. Did you know that you had the right to remain silent and not testify?

A. I wasn't advised of that, sir. I mean, I really wasn't. No one did.

The State brought forth no evidence below to contradict the respondent's testimony. Therefore, this Court finds that the respondent rebutted the presumption that he was informed by his trial counsel of his right not to testify. Accordingly, we conclude that the respondent's trial counsel was deficient in failing to inform the respondent of this right.

■ The test for determining whether ineffectiveness of counsel exists in a given set of circumstances is as follows:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). The respondent has met the first prong of this test by presenting unrebutted testimony that his trial counsel failed to inform him of his right not to testify. Under the second prong of the test, the respondent must show that there is a reasonable probability that, but for trial counsel's failure to inform him of his right not to testify, the outcome of his trial would have been different. The circuit court determined that the respondent was prejudiced by testifying because of three allegations that were raised during cross-examination of the respondent. These allegations were the respondent's involvement in stealing a van and a jeep; the respondent's appearance at Freddie Lester's home the morning following the murder where he conveyed certain information to Ms. Lester and others regarding the murder;[1] and the respondent's flight outside the State after the murder.

Upon carefully reviewing the record, this Court finds error in the circuit court's determination that the respondent was prejudiced by testifying at his trial. Significantly, the respondent's alleged involvement in stealing a van and jeep, the respondent's alleged appearance at Freddie Lester's home and the information he conveyed there, and his alleged flight outside of the State were all testified to by other witnesses prior to the respondent's testimony. Specifically, Trooper W.B. Davis of the North Carolina High-

way Patrol testified that the respondent and an individual named Timothy Hager originally were charged with possession of a stolen vehicle in North Carolina shortly after Freddie Lester's murder, but that the stolen vehicle charge against the respondent was subsequently dropped because he was a minor at the time. Another State's witness, Latoya Callaway, testified that she was with the respondent and Timothy Hager hours after Freddie Lester's murder, that Timothy Hager had stolen a Jeep, that the respondent and Timothy Hager had stolen another vehicle on the previous night, and that the respondent and Mr. Hager were going to North Carolina to sell the Jeep. Further, Freddie Lester's widow, Linda Lester, testified that the respondent came by her house several hours after her husband was killed and informed her that an individual named Mark Williams killed her husband because Mr. Williams had been kicked out of his house and needed $150.00. According to Ms. Lester, the respondent also indicated that Mr. Williams killed her husband with a .22 caliber gun. Dianne Gills, Ms. Lester's sister also testified of the respondent's visit to the Lester house and his reference to the stolen $150.00. In light of the fact that the jury heard all of the evidence that allegedly prejudiced the respondent before he testified, this Court concludes that there is not a reasonable probability that, but for the respondent's testimony, the outcome of his trial would have been different.[2]

In sum, this Court finds that the trial court's failure to instruct the respondent of his rights as articulated in *Neuman* is not constitutional error and is not cognizable in a habeas corpus proceeding. We further find that the respondent's trial counsel's failure to remind the trial court to instruct the respondent of his rights as stated in *Neuman* was not deficient under an objective standard of reasonableness. Finally, we find that the

---

**1.** It appears that the State's purpose for adducing this testimony was to show that the respondent had knowledge of specific details of the murder of Freddie Lester before these details were released by the investigating officers.

**2.** During his direct testimony, the respondent denied any involvement in Freddie Lester's murder. On cross-examination, he admitted traveling to North Carolina with Mr. Hager in a stolen Jeep, but he denied knowing that the Jeep was stolen until he and Mr. Hager arrived in North Carolina. He further denied telling Ms. Lester and Ms. Gills that $150.00 was stolen from the convenience store and that Freddie Lester was killed with a .22 caliber gun.

failure of the respondent's trial counsel to inform the respondent of his right not to testify was deficient conduct under an objective standard of reasonableness but that it was not prejudicial to the respondent. Therefore, we reverse the circuit court's order to the extent that it grants habeas relief to the respondent based on these issues.

In its second assignment of error, the State essentially challenges the circuit court's unsupported finding that "Michael Hopkins, based on the entire record, is not a credible witness." [3]

 This Court finds that the circuit court erred in determining that Mr. Hopkins is not a credible witness. Under our law, "[o]nly when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law." Syl. pt. 8, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987). While Mr. Hopkins' testimony was inconsistent below, it was not so unbelievable on its face that it defied physical laws. Therefore, Mr. Hopkins' credibility was a question for the jury and not the circuit court. Accordingly, this Court reverses the circuit court's finding that Mr. Hopkins' testimony was unbelievable as a matter of law.

 The third and final assignment of error proffered by the State is that the circuit court's order fails to set forth specific findings of fact and conclusions of law as to other findings of ineffective assistance of counsel. The respondent concedes that, other than the issue of his right not to testify, the circuit court's order fails to set forth detailed findings of fact and conclusions of law as to other determinations of ineffective assistance of counsel. The respondent requests that if this Court reverses the habeas corpus ruling based on the failure to inform the respondent of his right not to testify, that we remand this case to the circuit court for a more developed final order.

 In Syllabus Point 1 of *State ex rel. Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997), this Court held:

West Virginia Code section 53–4A–7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined.

The circuit court did not make in its final order specific findings of fact and conclusions of law relating to each contention advanced by the petitioner. As a result, this Court is unable to conduct a meaningful review of that portion of the circuit court's order. Having reversed the circuit court's findings regarding the failure to inform the respondent of his right not to testify and the credibility of Michael Hopkins, this Court finds it necessary to remand this case to the circuit court for the circuit court to make specific findings of fact and conclusions of law to support its other grounds for finding ineffective assistance of counsel.

## IV. CONCLUSION

For the reasons set forth above, we reverse the April 18, 2011, order of the Circuit Court of Pocahontas County which granted relief in habeas corpus to the respondent, and we remand this case to the circuit court for further proceedings consistent with this opinion.

**Reversed and remanded.**

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, Chief Justice, dissenting:

I would affirm the order granting habeas relief. The undisputed evidence was that the defendant's trial lawyer failed to advise the defendant that he had the right *not* to testify at his trial. To make matters worse, there is no evidence that the lawyer told the defendant that, if he testified, the State would be

---

**3.** Apparently, the circuit court's finding is based on the fact that Mr. Hopkins' trial testimony contradicted an earlier statement that he had given to the police. Also, at one point, Mr. Hopkins recanted his trial testimony, but at the evidentiary hearing in the instant matter Mr. Hopkins again reversed course and gave testimony consistent with his trial testimony.

able to cross-examine him with incriminating evidence. These failures made the lawyer, as a matter of law, ineffective. *See U.S. v. Teague*, 953 F.2d 1525, 1532 (11th Cir.1992) (a lawyer who fails to inform his client of a constitutional right relevant to his criminal trial has "neglected the vital professional responsibility of ensuring that the defendant's right ... is protected and that any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted 'within the range of competence demanded of attorneys in criminal cases,' and the defendant clearly has not received reasonably effective assistance of counsel.").

A defense lawyer's failure to advise his client of his testimonial constitutional rights is a failure that affects the very framework of the criminal trial. It is tantamount to having no lawyer at trial. Because it involves a fundamental constitutional right relevant to the framework of the criminal trial, such a failure amounts to a "structural constitutional violation." A structural constitutional violation requires the automatic reversal of the conviction. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); and *Neder v. U.S.*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). *See also* David McCord, *The "Trial" / "Structural" Error Dichotomy: Erroneous, and Not Harmless*, 45 U. Kan. L.Rev. 1401 (1996) (Discussing the "dichotomy between [constitutional] errors that are so serious that they are never amenable to harmless error analysis—and thus are reversible per se—and other [constitutional] errors, which are amenable to harmless error analysis." The first are "structural errors," and the latter "trial errors."); Jeffrey O. Cooper, *Searching for Harmlessness: Method and Madness in the Supreme Court's Harmless Constitutional Error Doctrine*, 50 U. Kan. L.Rev. 309 (2002) (Examining the strengths and weaknesses of the harmless error and structural error tests, noting that "support for the different tests seems to vary depending on the precise nature of the error involved in each case on review [and that] the question cannot be regarded as settled."); and Roger A. Fairfax, Jr., *Harmless Constitutional Error and the Institutional Significance of the Jury*, 76 Fordham L.Rev.2027 (2008).

I would also overrule our case law requiring a trial judge to advise represented criminal defendants of their right to testify, or to not testify. This is the duty of the defendant's lawyer—not the trial judge. A majority of courts have rejected imposing this requirement on trial judges, a point we expressly noted in *State v. Salmons*, 203 W.Va. 561, 582 n. 37, 509 S.E.2d 842, 863 n. 37 (1998). *See also* Michele C. Kaminski, Annotation, *Requirement that Court Advise Accused of, and Make Inquiry with Respect to, Waiver of Right to Testify*, 72 A.L.R.5th 403 (1999).

During trial, judges are busy refereeing numerous complicated procedural and substantive matters. They should not be required to act as an additional defense lawyer and be required to advise defendants, represented by a lawyer, about their testimonial rights. Other reasons for not imposing this duty on trial judges was aptly noted by the Supreme Court of Iowa in *State v. Reynolds*, 670 N.W.2d 405 (2003):

There are several reasons why a trial judge is not required to inform a defendant of his right to testify. First, a defendant's decision as to whether or not to testify is often made as the trial unfolds. By advising a defendant of his right to testify, a court could influence the defendant to waive his right not to testify, "thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right."

Second, a court could intrude upon the attorney-client relationship by advising a defendant of his right to testify. "A trial judge must take great care not to assume the functions of trial counsel." It is primarily the responsibility of defense counsel, not the trial judge, to advise a defendant as to whether or not he should testify *and to explain the tactical advantages and disadvantages of each option.* If a trial judge were to advise a defendant, *sua sponte*, of his right to testify, such an act could frustrate a decision on the matter made by the defendant and defense counsel who are designing trial strategy.

Finally, a trial judge is not required to inform a defendant of his right to testify

382

because it is difficult for a judge to determine the appropriate time that he should advise a defendant concerning his right to testify, since "the judge cannot know that a defendant has not testified until the defense rests and such a moment is not an opportune time to engage in a discussion with defendant which might lead to a rupture with defense counsel ... or might undo a trial strategy based on the defendant's not testifying."

*State v. Reynolds,* 670 N.W.2d at 412–413 (citations omitted) (emphasis added).

We should amend our *Rules of Criminal Procedure* to require defense lawyers to make a statement upon the record, before the presentation of the defendant's case-in-chief, that the defendant has been advised of his or her testimonial rights. The defendant would be allowed to alert the trial court if there is a disagreement with defense counsel regarding whether he or she should take the stand. If necessary, the trial court may conduct a hearing to inquire about any indicated disagreement.

I respectfully dissent. In addition, I would overrule Syllabus Point 7 of *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988), and related cases, which requires a trial judge to advise a represented defendant of his right to testify, or not testify, at his trial.