STATE OF WEST VIRGINIA

Jeffrey R. Finley,
Petitioner Below, Petitioner

vs.)  No. 18-0312 (Logan County 13-C-328)

Donnie Ames, Superintendent,
Mt. Olive Correctional Complex,
Respondent Below, Respondent

FILED

November 8, 2019

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey R. Finley, by counsel Benjamin Mishoe, appeals the March 8, 2018, order of the Circuit Court of Logan County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[1] by counsel Elizabeth Grant, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in finding that the violation of the Confrontation Clause[2] was harmless, that petitioner was properly informed of his right to testify or remain silent prior to taking the stand at trial, and that petitioner's trial counsel was effective.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Since the filing of the appeal in this case, the superintendent at Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3.

[2] "[T]he Confrontation Clause [is] contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution." Syl. Pt. 6, in part, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

1

Petitioner's wife ("the victim") was murdered on August 11, 2008, after the couple and their children returned home from a trip to Ohio. Petitioner learned of the victim's infidelities and stated to his daughter that "he had to kill [the victim] and get rid of her." Petitioner told his daughter, then seventeen years old, that he would also kill her and her younger brother if she "didn't keep her mouth shut." During the early hours of August 11, 2008, petitioner's daughter heard a gunshot in the home. She then heard petitioner say, "I'm sorry. . . . But I had to do it." Petitioner then came downstairs and told his daughter, "I don't know what I just did. . . . When I was backing out, the gun went off." Petitioner then summoned his daughter's help to dispose of the victim's dead body. He dressed the victim's body in her work clothes and then took the victim's body outside and put it in the passenger seat of her vehicle. Petitioner instructed his daughter to ditch the vehicle and threatened to kill her brother if she did not comply. After the victim's employer called the home to inform petitioner that the victim did not report to work, petitioner and the victim's mother traveled around town together looking for the victim. Ultimately, they went to a West Virginia State Police detachment and reported the victim missing. The victim's body was soon identified in her car nearby.

On August 12, 2008, during the investigation of the murder, petitioner initially denied any involvement in the crime and attempted to blame the murder on his daughter. However, he subsequently confessed to murdering the victim. Petitioner told the officers that "[w]e got in an argument and stuff and basically it just led into something else. So basically the trigger person was me; and I made my daughter . . . help me." He further explained to the officers that "I grabbed the gun . . . she had her head turned away from me, and then I basically . . . just pulled the trigger." Following his voluntary statement to the police, petitioner was arrested and charged with murder.

The investigating officers then went to a dumpster specified by petitioner and found a garbage bag that contained bed linens stained with what they believed to be blood. They also found two smaller plastic bags with a box of .38 caliber cartridges with three missing rounds, a pair of black sweatpants, a blue shirt, and a pair of men's underwear. The clothing was forensically tested and gunshot residue was found on the black sweatpants and blue shirt, later confirmed by petitioner's daughter to be the clothing petitioner wore on the day the victim was shot. The investigating officers also executed a search warrant on petitioner's home and recovered a .38 caliber pistol in the attic where petitioner told the officers he had hidden it. In May of 2009, petitioner was indicted by the Logan County Grand Jury for first-degree murder.

The circuit court held a trial in April of 2010 during which the State called the Deputy Chief Medical Examiner, Nabila Haikal, to testify regarding the victim's autopsy. Dr. Haikal testified that she did not perform the autopsy on the victim. However, Dr. Haikal co-signed the autopsy report. She explained that the co-signer reviews the report and may have discussions with the pathologist who performed the examination. She opined that the victim's death was caused by a gunshot wound. The actual autopsy report was not admitted into evidence, but during Dr. Haikal's testimony, the State introduced two photographs into evidence. One photograph depicted the back of the victim's head and neck, and the other photograph showed the bullet fragments that were retrieved from the victim's head. Before the introduction of the photographs, petitioner stipulated that "this lady is deceased and . . . she received a gunshot wound to the back of her

head." The State also offered a forensic expert who testified that the bed linens and clothing found in the dumpster contained the victim's blood. Petitioner's daughter testified extensively regarding the events surrounding the murder.

Petitioner's theory of the case was that his daughter committed the murder and that he confessed to protect her. Petitioner presented the testimony of nine witnesses, most of whom testified that his daughter's relationship with the victim was poor and that they often argued. Petitioner also called character witnesses. However, none of those witnesses had any knowledge of the events that transpired immediately before, during, or after the murder. At a bench conference, before petitioner testified, the circuit court, counsel, and petitioner discussed petitioner's right to testify. The circuit court advised petitioner, "I'm supposed to—I absolutely know that [counsel has] told [you] this—but you have the right to testify, and nobody can make you testify. If you testify, you're subject to cross-examination by the prosecuting attorney. Does that seem to pretty well cover it? Are you planning to testify?" Petitioner responded "[y]es." Petitioner's counsel then explained to petitioner that "[t]he judge has to tell you what I told you. You have the absolute right to say, 'I've got nothing to say' or you've got an absolute right to get up and say, '[h]ere's my side of it.'" After this conversation, petitioner chose to testify.

Petitioner testified that when the family returned from their trip to Ohio, he and his son fell asleep on the couch. He further testified that he woke up to find his daughter with his gun in her hand. According to petitioner, when he went into the victim's bedroom, the victim was already dead. Petitioner testified that the police coerced him into making a confession and that he did not kill the victim. Petitioner admitted to putting a black garbage bag of bed linens in a dumpster, but denied putting the smaller plastic bags containing clothing there. On April 16, 2010, following the jury trial, petitioner was convicted of first-degree murder and was subsequently sentenced to life in prison without the possibility of parole. Petitioner appealed his conviction to this Court. *See State v. Finley*, 229 W. Va. 690, 735 S.E.2d 565 (2012). His sole assignment of error was that the circuit court erred when it "permitted the State to introduce a third statement made by him to investigators—a statement in which he confessed to killing his wife." *Id*. at 691, 735 S.E.2d at 566. The Court found that petitioner's confession was a voluntary statement made to the investigators when he was not under arrest and he was free to leave the police station at any time and affirmed petitioner's conviction and sentence. *Id*.

In May of 2017, petitioner filed an amended petition for a writ of habeas corpus[3] alleging the following errors: (1) petitioner's right to confront his accuser under the Confrontation Clause was violated when the State presented the testimony of Dr. Haikal instead of Dr. Belding, the physician who performed the autopsy; (2) petitioner's counsel was ineffective; (3) petitioner was not adequately advised that he had a right to not testify at trial; and (4) the trial court erred by failing to adequately instruct the jury on the statutory elements of the crime.[4]

---

[3]Petitioner filed a pro se habeas petition in 2013 and was later appointed counsel to file the instant petition.

[4]The circuit court summarily denied the assignment of error regarding the jury instructions. Petitioner does not challenge the circuit court's ruling on this issue on appeal.

The circuit court held an omnibus hearing regarding the remaining issues in February of 2018. The court heard testimony from trial counsel and petitioner. Trial counsel testified that during his thirty-four years of practicing law, he tried approximately seven to ten murder cases. He testified that the theory of petitioner's criminal trial was that petitioner's daughter committed the murder and that she was motivated by her hatred of the victim. Trial counsel testified that he objected to the admission of the autopsy report because "you never want an autopsy report to go in front of the jury." However, trial counsel explained that he did not object to Dr. Haikal's testimony because he did not recall "her testifying to very much other than we had a deceased person and we were defending on who had done this crime." Trial counsel testified that he objected to the admission of one of the photographs because he believed the photograph was gruesome. Next, trial counsel testified regarding his conversations with petitioner about whether petitioner would testify at trial. Trial counsel recounted that, after the trial court deemed petitioner's confession to be admissible, he discussed it with petitioner. He explained,

> I recommended to him that even though he didn't have to testify, that we were in a position that he would probably have to testify because you've given a statement that is now going to come into evidence . . . as to explain why you would implicate yourself in a crime that involves possibly a life sentence. He explained to me that he gave the statement to protect his daughter.

Trial counsel recounted additional conversations with petitioner and stated that he explained to petitioner that he did not have to testify, but that he recommended that petitioner testify because "he had no way out as a practical matter except for him to explain to the jury what his view was and what happened." In regard to petitioner's direct appeal, trial counsel testified that he discussed the appeal with petitioner. He explained that he believed that challenging the denial of the motion to suppress the third statement was his strongest argument. Trial counsel testified that he reviewed the appeal with petitioner and that petitioner did not disagree with trial counsel's decision to raise only one issue on appeal.

Next, petitioner testified. He acknowledged the discussion with counsel and the circuit court regarding his right to testify. However, he testified that trial counsel never informed him that he could remain silent. Regarding his direct appeal, petitioner testified that he expressly told trial counsel to appeal the Confrontation Clause issue.

The circuit court heard arguments from the parties and ultimately denied petitioner's habeas petition. The court found that the violation of the Confrontation Clause was harmless error because the autopsy report was not introduced as evidence; Dr. Haikal's testimony did not "point to the guilt of the accused"; the cause of death was not a contested issue; and, given the considerable amount of evidence at trial, a jury could have found petitioner guilty of first-degree murder "without the testimony of Dr. Haikal." In sum, the circuit court found that Dr. Haikal's testimony was "harmless and did not impact the outcome" under the guidelines established by *State v. Flack*, 232 W. Va. 708, 753 S.E.2d 761 (2013). Next, the circuit court rejected petitioner's argument under *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988), that he was not adequately advised of his right to testify because the trial court advised him that he had a right to

4

testify or remain silent. The circuit court noted that, although disputed by petitioner, trial counsel "advised the Petitioner prior to trial of his right to testify and that he could not be forced to testify." Finally, the circuit court found that petitioner failed to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), to substantiate his claim of ineffective assistance of counsel. The circuit court found that petitioner failed to show that "the actions by trial counsel or appellate counsel rose to the type that would not have been followed by any reasonable attorney." Further, the court found that petitioner could not show that he was prejudiced because he was properly advised by his trial counsel. Lastly, the circuit court found that petitioner was not prejudiced by his trial counsel's failure to appeal additional issues. The court entered its order denying petitioner's request for habeas relief on March 8, 2018. It is from this order that petitioner now appeals.

In Syllabus Point one of *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016), we held as follows:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

First, petitioner argues that the circuit court erred in finding that the clear violation of the Confrontation Clause was harmless. Petitioner contends that the Confrontation Clause was violated because he was unable to confront Dr. Belding, the medical examiner who performed the autopsy on the victim. Petitioner also argues that the two photographs admitted into evidence during Dr. Haikal's testimony preclude a finding of harmless error. Petitioner states that both the United States Constitution and the West Virginia Constitution provide the right to all criminal defendants to confront the witnesses testifying against them in any criminal matter. This Court has established the requirements for this mandate as follows:

> Pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

Syl. Pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006). Petitioner further argues that this Court has specifically ruled it to be constitutional error to allow a pathologist other than the doctor who performed the autopsy to testify about an autopsy report or findings therein. This Court has held as follows:

> To the extent that W. Va. Code § 61-12-13 (Repl.Vol.2010) compels the mandatory admission of an autopsy report or other testimonial document, in a

criminal action, where the performing pathologist or analyst does not appear at trial and the State fails to establish that the pathologist or analyst is unavailable and that the accused has had a prior opportunity to cross-examine the witness, it is unconstitutional and unenforceable.

Syl. Pt. 6, *State v. Kennedy*, 229 W. Va. 756, 735 S.E.2d 905 (2012).

Here, the circuit court found the violation of the Confrontation Clause to be harmless error. Petitioner disagrees with the circuit court's finding that the error was harmless because the State did not present any evidence to demonstrate that Dr. Belding was unavailable as a witness. Petitioner states that Dr. Haikal was erroneously permitted to testify about the autopsy and autopsy report and petitioner did not have the ability to confront Dr. Belding. Petitioner further argues that the autopsy report contained opinions of Dr. Belding that "could not have been formed by merely examining the body." Further, petitioner notes that there was a "significant delay" between the date of the autopsy and the issuance of the autopsy report. Petitioner claims that he was denied the opportunity to question Dr. Belding regarding his notes and the delay in issuing the autopsy report. We disagree with petitioner's argument and find that the Confrontation Clause violation was harmless.

This Court has held that the "failure to observe a constitutional right constitutes reversible error unless it can be shown that that error was harmless beyond a reasonable doubt." *Mechling*, 219 W. Va. at 368, 633 S.E.2d at 313, syl. pt 2. In order to determine whether a Confrontation Clause violation constitutes harmless error, this Court considers "whether the information gleaned by the jury through such evidence contributed to the verdict or addressed a critical issue involving conflicting and pivotal evidence at trial." *State v. Blevins*, 231 W. Va. 135, 156, 744 S.E.2d 245, 266 (2013). Further, this Court has found harmless error when the cause of death was not a contested issue, the medical examiner's testimony did not implicate the defendant, and the medical examiner's testimony was largely duplicative of other testimony. *Id.*

Here, the cause of the victim's death was not at issue. In fact, petitioner stipulated during Dr. Haikal's testimony that the victim suffered from a gunshot wound to the head that caused her death. Further, Dr. Haikal's testimony did not implicate petitioner. Indeed, trial counsel testified during the omnibus hearing that he did not recall Dr. Haikal testifying to anything except that the victim was deceased and that a gunshot wound caused her death. Importantly, the State introduced other overwhelming evidence of petitioner's guilt. The jury heard petitioner's recorded statement wherein he confessed to shooting and killing the victim. Also in this statement, petitioner told the investigating officers where he disposed of bed linens (which forensic testing later confirmed) that contained the victim's DNA. Petitioner's clothing was also found in the dumpster and gunshot residue was found on the clothing. Additionally, evidence was presented that the investigating officers found the murder weapon in the attic, where petitioner told them it was hidden. Petitioner's daughter also testified regarding the events surrounding the murder. As such, it is clear that Dr. Haikal's testimony did not contribute significantly to the verdict. Accordingly, we find no error in the habeas court's finding that the jury could have found petitioner guilty even without the testimony from Dr. Haikal.

We further find petitioner's argument regarding the photographs admitted into evidence during Dr. Haikal's testimony to be meritless. We review "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, . . . under an abuse of discretion standard." Syl. Pt. 4, in part, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994). Here, the first photograph depicted the bullet fragments that were recovered from the victim's head and the second photograph showed the back of the victim's head with the bullet wound. These photographs simply showed that the victim sustained a gunshot to her head, a fact to which petitioner stipulated. As such, petitioner is entitled to no relief.

Next, petitioner argues that the circuit court erred in finding that he was properly informed of his right to testify or remain silent prior to taking the stand at trial. Petitioner acknowledges "a very brief discussion between the court, [petitioner,] and [his counsel] prior to [petitioner] taking the stand." However, petitioner claims that he was not "properly advised of the ramifications of testifying"[5] and that his decision to testify "cannot be considered knowingly or intelligently made, as required by applicable case law." We do not find petitioner's argument to be persuasive. This Court has held as follows:

---

[5]Also in support of this argument, petitioner asserts that he was not properly advised "of the jury instructions available if he chose not to testify." However, petitioner fails to support this assertion with any legal authority to demonstrate that he was entitled to be informed of different jury instructions depending on his decision to testify. Petitioner further does not provide any argument that his decision to testify would have been different if he was advised of different jury instructions. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal. . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. "[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Therefore, this argument will not be considered on appeal.

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

Syl. Pt. 7, *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988). This Court later clarified that "[w]hen a defendant is represented by legal counsel, a *Neuman* violation is harmless error in the absence of evidence that a defendant's legal counsel failed to inform him/her of the right to testify, or that the defendant was coerced or mislead into relinquishing the right to testify." *State v. Salmons*, 203 W. Va. 561, 583, 509 S.E.2d 842, 864 (1998).

The record shows that both trial counsel and the circuit court informed petitioner of his right to testify or remain silent before he took the witness stand. Trial counsel testified during the omnibus hearing that he did indeed inform petitioner of his right to testify or remain silent. We have often noted that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Ultimately, the circuit court found trial counsel's testimony that he informed petitioner of his right to testify or remain silent to be credible. The record also shows that prior to him taking the stand, the circuit court advised petitioner as follows: "I'm supposed to—I absolutely know that [counsel has] told [you] this—but you have the right to testify, and nobody can make you testify. If you testify, you're subject to cross-examination by the prosecuting attorney. Does that seem to pretty well cover it? Are you planning to testify?" Petitioner responded "[y]es." Petitioner's counsel then explained to petitioner that "[t]he judge has to tell you what I told you. You have the absolute right to say, 'I've got nothing to say' or you've got an absolute right to get up and say, '[h]ere's my side of it.'" Therefore, we find no error in the circuit court's finding that petitioner was properly informed of his right to testify or remain silent at trial.

Finally, petitioner argues that the circuit court erred in finding that his trial counsel was effective. In support, petitioner offers three areas wherein his trial counsel was ineffective. First, petitioner contends that trial counsel was ineffective for failing to object to Dr. Haikal's testimony because it was clear that she did not perform the autopsy on the victim. Next, petitioner asserts that it was improper for trial counsel to appeal only one issue, "thus depriving him of his right to appeal other pertinent issues." Third, petitioner argues that trial counsel was ineffective because he did not adequately advise petitioner of his right to testify or remain silent during the criminal trial. Petitioner believes the conduct of his trial counsel was "outside the broad range of professionally competent assistance" and, therefore, the circuit court's ruling was erroneous. *See* syl. pt. 6, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). We disagree and find petitioner is entitled to no relief regarding his claim of ineffective assistance of counsel.

We have held that

claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Miller*, 194 W. Va. at 3, 459 S.E.2d at 114, syl. pt. 5, in part.

As discussed above, Dr. Haikal testified that the victim's death was caused by a bullet wound to the head. The cause of death was not an issue at trial and Dr. Haikal's testimony did not implicate petitioner. Petitioner fails to prove that he was prejudiced by his counsel's failure to object to Dr. Haikal's testimony, particularly due to the overwhelming evidence of his guilt, including petitioner's own confession. In regard to petitioner's argument that trial counsel was ineffective because he appealed only one issue, petitioner fails to specifically articulate what claims trial counsel should have raised on appeal, with the exception of the Confrontation Clause issue. However, other than his self-serving testimony, there is no evidence to support petitioner's claim that he requested that trial counsel raise any additional issues on appeal. On the contrary, at the omnibus hearing, trial counsel testified that he reviewed the appeal with petitioner and that petitioner agreed with his recommendations. Also discussed above, the record shows that petitioner was properly informed by trial counsel and the trial court regarding his right to testify or remain silent during his criminal trial. Based upon the foregoing, we find no error in the circuit court's finding that petitioner's trial counsel was effective.

For the foregoing reasons, we affirm the circuit court's March 8, 2018, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**:  November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison